USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 9/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YISRAEL Z. HEILMANN,

Plaintiff,

-against-

YESHIVA UNIVERSITY; SEYFARTH SHAW LLP; KYLE D. WINNICK; DOV KESSELMAN; IAN M. CAPELL; DR. REBECCA CYPESS; DR. SARA ASHER; DR. YEDIDYA LEVY; JOE BEDNARSH; JUDITH E. LOPEZ; JENNIFER GOLDEN; DR. YAEL MUSKAT; ESTHER K. SASSON; ABIGAIL KELSEN; NORMA SILBERMINTZ; AVI FEDER; SAPIR AMAR; MOSHE DAVIDOVICS; JONATHAN WERTA; JOSE HAMBRA; SALVADOR SERFATY; JOHN DOES 1–10 (Students); JOHN DOES 11–20 (Institutional Actors),

Defendants.

25 Civ. 2431 (AT) (RWL)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff *pro se*, Yisrael Z. Heilmann, brings this action against Yeshiva University ("YU"), its legal counsel,[1] and several of its employees (collectively, "YU Defendants"), as well as certain YU students. *See generally* Second Consolidated Amended Complaint ("SCAC"), ECF No. 92. Plaintiff, a former YU student, claims that YU violated various federal and state laws in connection with its response to alleged harassment and a physical assault committed by Plaintiff's classmates. *See id.* at ¶¶ 83–263 (asserting 36 claims).

Before the Court are three motions to dismiss brought by (1) Yonatan Werta, *pro se*; (2) Jose Hambra and Salvador Serfaty, and (3) YU Defendants. *See* Werta Mot., ECF No. 85; Hambra & Serfaty ("H&S") Mot., ECF No. 106; YU Mot., ECF No. 100; *see also* YU Mem., ECF No. 101; H&S Mem., ECF No. 107. For the reasons stated below, each motion is GRANTED.

[1] Seyfarth Shaw LLP, and attorneys, Dov Kesselman, Ian Capell, and Kyle Winnick. *See* YU Mem. at 1, ECF No. 101; *see also* SCAC ¶¶ 19–22.

## BACKGROUND

I. Factual Background[2]

A. Conflict with Werta in Fall 2022

In August 2022, Plaintiff, a German national, enrolled as a student at YU's Wilf Campus on a F-1 Student Visa. SCAC ¶ 60. Plaintiff alleges that shortly thereafter, he "became the target of egregious harassment by a fellow student due to Plaintiff's national origin." *Id.*

In October and November 2022, Plaintiff's classmate, Yonatan Werta, "performed Nazi salutes in public—even in a campus synagogue during morning prayers," "sent Plaintiff disturbing WhatsApp voice messages referencing Hitler and Nazi ideology," and sang the "Nazi Party anthem." *Id.* On November 16, 2022, Werta stated that he had a "weapon in his backpack" and that he "would be in the news in the afternoon." *Id.* The SCAC does not clarify to whom Werta made this statement, but the Court assumes it was made to Plaintiff. Plaintiff "promptly" reported Werta's comment to a YU security officer. *Id.* ¶ 61.

Two weeks later, on November 30, Plaintiff "filed a formal written complaint . . . documenting Werta's ongoing discrimination against him on the basis of Plaintiff's German background." *Id.* ¶ 61. The complaint "detailed Werta's offensive communications, Nazi references, and threatening behavior" and "underscored the severe distress these repeated acts were causing Plaintiff." *Id.* ¶ 61.

At least one university employee "intervene[d] upon learning of the Nazi-themed attacks" by collecting evidence and notifying the Dean of Students. *Id.* ¶ 62. Plaintiff alleges, however,

---

[2] The Court accepts as true for the purposes of this motion all well-pleaded facts. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). On a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, matters subject to judicial notice, documents integral to the complaint, and documents incorporated into the complaint by reference. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

that YU's response was "grossly inadequate." *Id.* For example, he states that after he informed two YU administrators—Sara Asher (the Dean of Students) and Yedidya Levy (the Associate Director of YU's Counseling Center and/or YU's Housing Administrator)[3]—of Werta's behavior, instead of disciplining him, they told Plaintiff to "remain silent." *Id.* Plaintiff contends that "Werta faced no meaningful consequences for his actions." *Id.* ¶ 63. Plaintiff does not claim that Werta made further comments after November 2022. *See generally* SCAC.

Plaintiff alleges that other students, Jose Hambra and Salvador Serfaty, also "made derogatory remarks about Plaintiff's nationality." *Id.* ¶ 144. At unspecified times, Hambra used "Nazi-themed gestures and anti[-]German insults," *id.* ¶ 38, and Serfaty "[took] part in coordinated acts of . . . ethnic animus directed at Plaintiff," *id.* ¶ 39. Plaintiff reported these incidents "to university officials," including to Norma Silbermintz, a YU faculty member, *id.* ¶¶ 29, 144, but "no action was taken to stop" the students. *Id.* ¶ 144.

Plaintiff claims that in December 2022, Silbermintz circulated an internal faculty email about Plaintiff in which she stated that he is "32, from Germany," "openly questioned whether YU was 'the right place for him,'" and opined that Plaintiff could not "stay in touch with reality." *Id.* ¶ 29. Plaintiff states that Silbermintz, at unspecified times and in unspecified ways, "used Plaintiff's nationality against him in addressing his complaints," made a comment "that effectively endors[ed] [a] stereotype against Plaintiff," and "explicitly referenced [his] German nationality." *Id.* ¶¶ 144, 154. The SCAC does not provide further details as to the content and timing of Silbermintz's statements.

[3] Levy's title is inconsistent throughout the SCAC. *Compare* SCAC ¶ 24 (identifying Levy as "an Associate Director of YU's Counseling Center"), *with* ¶ 62 (identifying him as YU's "Housing Administrator").

B. Removal from Student Housing in December 2023

Plaintiff was an "older-than-typical" undergraduate student, who had been a resident in YU campus housing for multiple semesters. *Id.* ¶ 64. In December 2023, Levy "abruptly instructed" Plaintiff that he would have to vacate his on-campus dormitory by the end of the term. *Id.*; *see id.* ¶ 24. Levy and/or Avi Feder (the Director of Housing)[4] told Plaintiff he was "too old" to live in the dorms. *See id.* ¶¶ 33, 64, 159.

C. Conflict with Amar in March 2024

1. March 13, 2024 Incident

On March 13, 2024, Plaintiff noticed that personal items he had left in a campus study area—specifically, a laptop charger and an electronic stylus—were missing. *Id.* ¶ 66. Suspecting they had been stolen, he reported the incident to campus security. *Id.* Hours later, he observed another student, Sapir Amar, using what appeared to be his missing charger. *Id.* Plaintiff approached Amar, who "vehemently denied the theft and became aggressive." *Id.* During this interaction, Amar "hurled ethnic slurs and derision at Plaintiff's European (German) origin," stating that "such behavior might be 'normal where you come from, but not in the U.S.'" *Id.* Amar then "boasted that he had powerful connections" and "warned Plaintiff that he could have him expelled or even deported from the United States if Plaintiff kept accusing him" of theft. *Id.* ¶ 67. In response, Plaintiff "immediately notified YU security and administrators of Amar's theft, the ethnic slurs, and the alarming threats." *Id.* ¶ 67. Plaintiff states that "[n]o immediate disciplinary action or safety measures were taken against Amar after the March 13 incident," and he "was not offered any security escort or other protection." *Id.*

[4] The SCAC is inconsistent as to who made this statement.

2. March 21 Incident

One week after Plaintiff's first confrontation with Amar, at approximately 1:00 a.m., Plaintiff was in his dormitory room when Amar entered "without any permission." *Id.* ¶ 68. Plaintiff "demanded that Amar leave at once." *Id.* Amar then "rais[ed] his voice," "vowed to harm Plaintiff and even threatened Plaintiff's family, and again boasted of his diplomatic connections." *Id.* Amar also "snatched . . . from Plaintiff's hands" a written note that Amar had given Plaintiff following the March 13 incident which "pertained to the charger," "tore it to pieces, and pocketed the fragments." *Id.* Plaintiff "immediately reported this [alleged] home invasion and renewed threats to campus security." *Id.* "Campus security did not [immediately] apprehend Amar or station an officer to protect Plaintiff." *Id.*

Plaintiff then went to a 24-hour campus study area. *Id.* ¶ 69. At 2:00 a.m., Plaintiff and Amar had another confrontation. *Id.* Amar began shouting "insults and threats," and in response, Plaintiff raised his smartphone. *Id.* Amar snatched a water bottle in Plaintiff's other hand, splashing the water into Plaintiff's eyes. *Id.* Then, the altercation escalated: Amar punched Plaintiff in the face and torso multiple times, kicked him repeatedly, and swung a hard study chair into Plaintiff. *Id.* ¶ 70. Plaintiff was "left bleeding, disoriented, and unable to stand immediately due to pain," and his injuries "required emergency hospital treatment." *Id.* ¶ 71. During the attack, no YU personnel were on the scene. *Id.* ¶ 72. Officers from the New York Police Department eventually arrived and arrested Amar. *Id.* ¶¶ 72–73. Amar instructed one of his friends, Moshe Davidovics, to make certain statements to the NYPD in exchange for help in pre-med courses. *Id.* ¶ 72.

On March 21, while Plaintiff was in the hospital for treatment, Asher "telephoned him and instructed him to refuse certain medical tests and to leave the hospital as soon as possible."

*Id.* ¶ 73. Between March 21 and 25, she repeatedly called and texted Plaintiff, urging him to "let [the incident] go." *Id.* ¶ 73.

D. March 25, 2024 Incident

On March 25, 2024, YU administrators called Plaintiff for a meeting at the campus psychological services offices. *Id.* Inside, Levy and Judith Lopez, a YU Counseling staff member, "shut the door and refused to let Plaintiff exit" for approximately "10–15 minutes." *Id.* ¶ 74. According to Plaintiff, Levy and Lopez stated that "if Plaintiff pursued criminal charges against Amar or any civil action against [YU]," Plaintiff and his family "could be killed." *Id.* When Plaintiff "refused to capitulate," Levy stated that YU "would make sure Plaintiff's student visa was canceled immediately, so that he would be forced to leave the country." *Id.* ¶ 74. During this meeting, Lopez "positioned herself to block the door and at one point grabbed Plaintiff's arm when he tried to move toward the exit." *Id.* Lopez "expressed sympathy for [Amar]," stating that "Jews should not be in jail," and Levy alluded to his and Amar's Israeli military background, which Plaintiff understood to imply that "he and Amar were perfectly capable of making Plaintiff 'disappear' if he did not comply." *Id.* ¶ 75.

Plaintiff attempted to contact Yael Muskat (the head of YU's Counseling Center) to report this incident, but Muskat did not respond. *Id.* ¶ 76. Plaintiff provided a formal witness statement about the incident to law enforcement, including federal authorities and the German consulate. *Id.* At some point, Levy and Lopez told a student who was "favorable" to Plaintiff "not to get involved" and questioned another about their immigration status. *Id.* ¶ 194.

E. Requests for Accommodations and Counseling Services

Due to the March 21, 2024 attack, Plaintiff experienced health challenges that interfered with his studies. *Id.* ¶ 77. He suffered cognitive impairments from his head injury, as well as

hearing loss and psychological trauma. *Id.* Plaintiff sought reasonable accommodations from YU to help him finish the semester without academic penalty. *Id.* YU purportedly denied Plaintiff's requests. *Id.* ¶ 78; *see also id.* ¶ 30. Specifically, Plaintiff states that he did not receive "a reduced course load," "extensions of deadlines," "modified exam schedules," or "counseling support." *Id.* ¶ 78. Plaintiff's health "deteriorated further under the stress, and his academic performance suffered." *Id.* In addition, "[w]hen Plaintiff tried to make appointments for counseling, he would either be ignored or rebuffed," and Asher, at some point, sent Plaintiff a letter accusing him of "disruptive behavior" in the counseling center. *Id.* ¶ 79.

In August 2024, after Plaintiff secured legal counsel, YU administrators ceased direct communication with him. *Id.* Plaintiff alleges that certain emails sent to YU administrators, including a letter from his attorney, "went missing" from YU records. *Id.* Plaintiff also alleges that after he hired a lawyer, Rebecca Cypess (Vice Provost of YU) "downgraded his academic work without basis"; that Cypess and Asher "influenced [his] failing grades and denied accommodations"; and that Cypess, along with Jennifer Golden (YU's Director of International Student Services), "froze [Plaintiff's academic] account and withheld transcripts" unjustifiably. *Id.* ¶¶ 27, 28, 226.

F. Mental Health Report

Plaintiff claims that Muskat and Levy "authored a memorandum" describing Plaintiff as "paranoid, delusional, and a potential threat . . . without clinical basis." *Id.* ¶ 251. The report was shared internally with YU administrators, including Levy, Asher, and YU's counsel, and "possibly with outside authorities." *Id.* The SCAC does not state the date of the memorandum.

G. End of YU Enrollment

In or about October 2024, "Plaintiff ceased to be enrolled at YU." *Id.* ¶ 80. The SCAC, which alleges that YU's "retaliatory acts . . . forced Plaintiff to discontinue his studies," does not explicitly state whether Plaintiff decided not to enroll, or whether he was expelled by YU. *Id.* YU then formally terminated Plaintiff's F-1 visa sponsorship. *Id.* On April 28, 2025, YU demanded "immediate payment" of $27,500, a charge that Plaintiff claims "was entirely unexplained and appeared nowhere in Plaintiff's prior student accounts." *Id.* ¶ 81. Plaintiff contends that YU levied this charge so that Plaintiff would drop his claims against YU. *Id.*

H. Subsequent Proceedings and Investigations

Several of Plaintiff's claims pertain to actions taken by YU and its legal counsel in subsequent proceedings and/or investigations related to the March 21, 2024 incident. Plaintiff states:

- YU agents and administrators (unspecified) "republished and failed to correct [Davidovics'] false claims" to law enforcement. *Id.* ¶ 105. Kesselman, Capell, and Winnick (attorneys at Seyfarth Shaw LLP, *id.* ¶¶ 20–22) reiterated these statements "in communications with government agencies and others." *Id.* ¶ 105. (The SCAC does not specify to whom or where the statements were published.)

- Certain unnamed YU officials disclosed Plaintiff's private education records to unauthorized persons. *See id.* ¶¶ 119, 121. (The SCAC does not specify what records were disclosed, to whom, when, and how.)

- Cypess and other unnamed YU officials "withheld critical information from investigators," "failed to report eyewitness accounts that corroborated Plaintiff," and "discouraged other students from coming forward." *Id.* ¶ 124.

- Asher "intervened" with the District Attorney's office to "get Amar out of jail and to discourage [Plaintiff from] proceed[ing with] the criminal investigation of Amar." *Id.*

- YU "did not preserve surveillance footage" and "may have concealed documents." *Id.*

II. Summary of Claims

Plaintiff brings thirty-six claims against various Defendants, seeking $1.2 billion in damages. *See* SCAC at 102, 110. Plaintiff's causes of action are summarized in the chart below. The relevant individual defendants' names are listed alphabetically.

| **Count(s)** | **Claims**<br>**(Purported Source of Cause of Action)** | **Defendants** |
|---|---|---|
| 1 | *Assault*<br>(New York Common Law) | YU Defendant<br>• YU<br><br>Other Defendant<br>• Amar |
| 2 | *Battery*<br>(New York Common Law) | YU Defendant<br>• YU<br><br>Other Defendant<br>• Amar |
| 3 | *Intentional Infliction of Emotional Distress*<br>(New York Common Law) | • All Defendants |
| 4 | *Trespass*<br>(New York Common Law) | YU Defendant<br>• YU<br><br>Other Defendant<br>• Amar |
| 5, 32[5] | *Defamation*, *Defamation Per Se*<br>(New York Common Law) | YU Defendants<br>• YU (5, 32)<br>• Capell (5, 32)<br>• Kesselman (5, 32)<br>• Winnick (5)<br>• Seyfarth Shaw LLP (32)<br><br>Other Defendant<br>• Davidovics (5) |

[5] Counts 5 and 32 each assert essentially identical claims, concerning defamation arising out of statements made to law enforcement and other YU officials. *See* SCAC ¶¶ 103, 239.

| | | |
|---|---|---|
| 6 | *Civil Conspiracy to Defame*<br>(New York Common Law) | YU Defendant<br>• YU<br>Other Defendants<br>• Amir<br>• Davidovics |
| 7 | *False Imprisonment*<br>(New York Common Law) | YU Defendants<br>• YU<br>• Asher<br>• Levy<br>• Lopez |
| 8 | *Invasion of Privacy*<br>(Family Educational Rights and Privacy Act ("FERPA"); Health Insurance Portability and Accountability Act ("HIPAA"); and General Data Protection Regulation ("GDPR"); New York Common Law) | YU Defendants<br>• YU<br>• Asher<br>• Cypess<br>• Golden<br>• Levy<br>• John Does 11–20 |
| 9 | *Obstruction of Justice*<br>(42 U.S.C. § 1985(2); New York Common Law) | YU Defendants<br>• YU<br>• Asher<br>• Cypess<br><br>Other Defendants<br>• Amar<br>• Davidovics |
| 10, 12, 27[6] | *Retaliation (Disability)*<br>(American with Disabilities Act ("ADA"), 42 U.S.C. § 12203; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(7)) | YU Defendants<br>• YU (10, 12)<br>• Asher (10, 12, 27)<br>• Cypess (10, 12, 27)<br>• Feder (10)<br>• Golden (10, 12, 27)<br>• Kelsen (12)<br>• Levy (10, 27)<br>• Muskat (27)<br>• Sasson (10) |
| 11, 35 | *Failure to Accommodate (Disability)* (11)<br>(ADA, 42 U.S.C. § 12182; Rehabilitation Act § 504, 29 U.S.C. § 794)<br><br>*Failure to Engage in Interactive Process* (35)<br>(ADA; NYSHRL) | YU Defendants<br>• YU (11, 35)<br>• Asher (35)<br>• Bednarsh (35)<br>• Cypess (35)<br>• Golden (35) |

[6] Counts 10, 12, and 27 each assert claims of retaliation under ADA and NYSHRL in connection with Plaintiff's purported disability-based protected activity and subsequent adverse actions taken by YU officials, including academic retaliation and constructive expulsion. *See* SCAC ¶¶ 127–31, 137–41, 214–18.

| | | |
|---|---|---|
| | | • Kelsen (11)<br>• Sasson (35) |
| 13 | *Discrimination (National Origin)*<br>(Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 2000d; 42 U.S.C. § 1983) | YU Defendants<br>• YU<br>• Silbermintz<br><br>Other Defendants<br>• Amar<br>• Hambra<br>• Serfaty<br>• Werta<br>• John Does 1–10 |
| 14 | *Hostile Educational Environment (National Origin)*<br>(Title VI) | • All Defendants |
| 15 | *Disparate Treatment (Age, National Origin)*<br>(Title VI) | • All Defendants |
| 16 | *Discrimination (Age)*<br>(NYSHRL, N.Y. Exec. Law. § 296(1); New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-107(1)(a)) | YU Defendants<br>• YU<br>• Feder<br>• Levy<br>• Silbermintz |
| 17 | *Constructive Expulsion / Breach of Contract*<br>(New York Common Law) | YU Defendant<br>• YU |
| 18 | *Fraudulent Misrepresentation*<br>(New York Common Law) | YU Defendant<br>• YU |
| 19 | *Fraudulent Billing*<br>(N.Y. Gen. Bus. Law § 349, Common Law Fraud) | YU Defendants<br>• YU<br>• John Does 11–20 |
| 20 | *Abuse of Process*<br>(New York Common Law) | YU Defendant<br>• YU |
| 21 | *Civil Racketeer Influenced and Corrupt Organizations Act ("RICO")*<br>(18 U.S.C. § 1962(c)) | YU Defendants<br>• YU<br>• Capell<br>• Kesselman<br>• Sasson<br>• Seyfarth Shaw LLP<br>• Winnick |
| 22 | *Spoliation of Evidence*<br>(New York Common Law) | YU Defendants<br>• YU<br>• Cypess |
| 23 | *Witness Intimidation*<br>(42 U.S.C. § 1985(2); New York Common Law) | YU Defendants<br>• YU |

| | | |
|---|---|---|
| | | • Levy<br>• Lopez |
| 24 | *Negligent Hiring and Supervision*<br>(New York Common Law) | YU Defendant<br>• YU |
| 25 | *Equal Protection Violation*<br>(42 U.S.C. § 1983) | YU Defendant<br>• YU<br><br>Other Defendants<br>• Amar<br>• Hambra<br>• Werta |
| 26 | *Civil Rights Conspiracy*<br>(42 U.S.C. § 1985(3)) | YU Defendants<br>• YU<br>• Asher<br>• Cypess<br>• Golden<br>• Levy<br>• Lopez<br>• Muskat<br><br>Other Defendants<br>• Amar<br>• Davidovics |
| 28 | *Due Process Violation*<br>(42 U.S.C. § 1983 (U.S. Constitution); New York Common Law (New York Constitution)) | YU Defendant<br>• YU |
| 29, 33 | *Academic Retaliation* (29)<br>*Interference with Educational Opportunity* (33)<br>(42 U.S.C. § 1983; N.Y. Educ. Law) | YU Defendants<br>• YU (29, 33)<br>• Asher (29)<br>• Cypess (29)<br>• Golden (29) |
| 30 | *Negligence/Gross Negligence:*<br>*Failure to Protect from Known Threat*<br>(New York Common Law) | YU Defendants<br>• YU<br>• Asher<br>• Bednarsh<br>• Cypess<br>• Levy<br>• Muskat |
| 31 | *Threats of Deportation*<br>(NYSHRL, N.Y. Exec. Law § 296(7); NY Penal Law § 135.60(5)) | YU Defendants<br>• Levy<br>• Lopez<br>• Golden |

| | | |
|---|---|---|
| 34 | *Falsified Mental Health Report (Defamation)* (New York Common Law) | YU Defendants<br>• YU<br>• Asher<br>• Levy<br>• Muskat |
| 36 | *Retaliatory Billing & Financial Pressure* (NYSHRL, N.Y. Exec. Law § 296(7)) | YU Defendants<br>• YU<br>• John Does 11–20 |

III. Procedural History

Plaintiff initially filed twelve separate lawsuits against various defendants. *See* YU Mem. at 3 & n.3. On June 12, 2025, the Court consolidated the twelve actions. *See* ECF No. 31. On June 30, 2025, Plaintiff filed his First Consolidated Amended Complaint ("FCAC"), *see* ECF No. 32, and on October 23, 2025, Plaintiff filed the SCAC. After certain defendants filed motions to dismiss, Plaintiff sought leave to amend the SCAC, which, pursuant to an order of reference, the Honorable Robert W. Lehrburger denied for failure to show good cause. *See* ECF Nos. 109, 113; *see also* ECF No. 10 (referral order).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed when it is apparent that the Court lacks subject matter jurisdiction. *See Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. When adjudicating a motion to dismiss, the Court must draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

A *pro se* party is "generally accorded leniency," and their submissions are "construed to 'raise the strongest arguments they suggest.'" *Lanier v. Capra*, No. 21 Civ. 9307, 2023 WL 6795441, at *3 (S.D.N.Y. Oct. 13, 2023) (quoting *Milano v. Astrue*, No. 05 Civ. 6527, 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008)). This solicitude does not, however, relieve a plaintiff of his obligation to comply with the pleading standards of the Federal Rules of Civil Procedure. *See Hudson v. Lokhart*, 554 F. Supp. 2d 494, 496 (S.D.N.Y. 2008).

## DISCUSSION

### I. Motions to Dismiss by Werta, Hambra, and Serfaty

Plaintiff asserts the following causes of action against Werta, Hambra, and Serfaty: (1) discrimination (Count 13), hostile educational environment (Count 14), and disparate treatment (Count 15), in violation of Title VI; (2) violation of equal protection under the United States Constitution pursuant to 42 U.S.C. § 1983 (Count 25) (against Hambra and Werta only); and (3) intentional infliction of emotional distress ("IIED") under New York common law (Count 3). The Court dismisses these claims.

A. Title VI Claims (Counts 13, 14, 15)

Plaintiff's Title VI claims against Werta, Hambra, and Serfaty are dismissed with prejudice because Title VI does not provide for individual liability. *See, e.g.*, *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018).

B. Equal Protection Clause (against Werta and Hambra only) (Count 25)

Plaintiff's constitutional claims against Werta and Hambra fail. "The [F]ourteenth [A]mendment acts only to proscribe unlawful discriminatory practices of the state. . . . Discriminatory conduct on the part of private individuals or organizations, which [cannot] be attributed to the state, simply does not rise to the level of a constitutional violation." *Corrente v. St. Joseph's Hosp. and Health Ctr.*, 730 F. Supp. 493, 500 (N.D.N.Y. 1990). Plaintiff has not plausibly alleged that Werta and Hambra, private citizens and Plaintiff's former classmates at YU, engaged in state action. At most, the SCAC asserts that Werta and Hambra provided false reports to the NYPD, *see* SCAC ¶ 208, but "the provision of information to police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors" for the purposes of constitutional claims. *Carrillos v. Incorporated Vill. of Hempstead*, 87 F. Supp. 3d 357, 371 (E.D.N.Y. 2015). Plaintiff's constitutional claims against Werta and Hambra fail, and because the Court finds that amendment would be futile, the claims are dismissed with prejudice.

C. IIED (Count 3)

Although Plaintiff's federal claims against Werta, Hambra, and Serfaty are dismissed with prejudice, the Court, in its discretion, exercises supplemental jurisdiction over the state law IIED claim against these defendants because, in light of the sparse allegations against them, "the

legal issues are relatively straightforward" and "efficiency favors retaining jurisdiction." *Harris v. Leon*, No. 20 Civ. 10864, 2023 WL 2051171, at *8 (S.D.N.Y. Feb. 16, 2023).

Plaintiff fails to adequately plead an IIED claim against Werta, Hambra, and Serfaty. Plaintiff states that in October and November 2022, Werta "performed Nazi salutes in public," "sent Plaintiff disturbing WhatsApp voice messages referencing Hitler and Nazi ideology (at times even addressing Plaintiff as 'Hitler,')" and sang the Nazi anthem. SCAC ¶ 60. And in November 2022, Werta made a one-time "hint at potential violence." *Id.* Plaintiff alleges that Hambra "participated in the harassment of Plaintiff by using Nazi-themed gestures and anti[-]German insults," *id.* ¶ 38, and made "derogatory remarks about Plaintiff's nationality," *id.* ¶ 144. Similarly, he claims that Serfaty "joined other students in the organized harassment of Plaintiff," *id.* ¶ 39, and "made derogatory remarks about Plaintiff's nationality," *id.* ¶ 144. Plaintiff does not specify what Hambra and Serfaty did or said, or when. *See generally id.*

To state an IIED claim under New York law, Plaintiff must allege: "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d. Cir. 2009) (summary order) (citations omitted). The Court "may decide whether alleged conduct is sufficiently outrageous as a matter of law." *Id.*

Plaintiff's allegations do not state an IIED claim. Accepting all factual allegations as true, Plaintiff has alleged that at most, the YU students engaged in acts constituting "harassment, disrespectful or disparate treatment . . . intimidation, insults or other indignities"; but such conduct "fail[s] to sustain an intentional infliction of emotional distress claim because such

conduct is not sufficiently outrageous." *Blanco v. Success Academy Charter Schs., Inc.*, 722 F. Supp. 3d 187, 220 (S.D.N.Y. 2024) (internal quotation marks and citation omitted); *see also* *Turley v. ISG Lackawanna, Inc.*, 803 F. Supp. 3d 217, 255 (W.D.N.Y. 2011) ("New York courts have made it clear that the 'use of religious, ethnic or racial aspersions to denigrate a person . . . is not sufficiently egregious conduct to state a claim' of [IIED]." (citation omitted)).

The Court denies Plaintiff leave to amend his IIED claim. Plaintiff has amended his complaint on multiple occasions and has failed to add further detail regarding these students' alleged conduct. *See, e.g.*, ECF Nos. 29, 32, 92. Nor is it apparent from Plaintiff's opposition brief how he could cure the deficiencies in this claim. *See Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022); *see also* Opp., ECF No. 123. The Court, therefore, dismisses the IIED claims against Werta, Hambra, and Serfaty with prejudice.

II. <u>YU Defendants' Motion to Dismiss</u>

The Court dismisses all of Plaintiff's federal causes of action against YU Defendants and declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).

A. Invasion of Privacy (Count 8)

Plaintiff's claim of invasion of privacy is not grounded in federal law. *See* SCAC ¶¶ 117–21. Neither FERPA nor HIPAA confer a private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) ("FERPA's nondisclosure provisions fail to confer enforceable rights."); *Doall v. N.Y. State Unified Ct. Sys.*, No. 23 Civ. 364, 2024 WL 3302376, at *12 (E.D.N.Y. July 2, 2024) ("It is well-established there is no private right of action under HIPAA."). Plaintiff also cites the GDPR, but the GDPR is a "set of European Union privacy laws that do not apply to the United States." *Story v. Nat'l Sec. Agency*, 2024 WL 4452693, at

*4 (N.D.N.Y. Oct. 9, 2004). Lastly, to the extent that Count 8 could be construed to allege a privacy claim derived from the U.S. Constitution, 42 U.S.C. § 1983 does not supply a cause of action because YU is a private university, and Plaintiff has not plausibly alleged that YU was a state actor. *See Subbotovskiy v. Touro Univ.*, 2023 WL 8829173, at *3 (E.D.N.Y. Dec. 20, 2023). Because amendment would be futile, Count 8 is dismissed with prejudice.

B. Witness Intimidation and Obstruction of Justice under 42 U.S.C. § 1985(2) (Counts 9 and 23)

Plaintiff's conspiracy claims for witness intimidation and obstruction of justice under 42 U.S.C. § 1985(2) each fail. Section 1985(2) "contains two clauses prohibiting distinct conspiratorial conduct." *Butler v. Hesch*, 286 F. Supp. 3d 337, 364 (N.D.N.Y. 2018). The first clause prohibits conspiratorial interference with witnesses in connection with a federal court proceeding, and the second clause prohibits conspiratorial interference with state court proceedings, with the intent to deny an individual equal protection of the laws. *See id.*; 42 U.S.C. § 1985(2). Plaintiff asserts claims under both clauses.

Plaintiff does not adequately plead a conspiracy, which is fatal to both claims. "[T]o maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003). Plaintiff's complaint contains no allegations of an agreement. *See, e.g.*, SCAC ¶¶ 124, 194.

Plaintiff's § 1985(2) claims fail in further respects. To state a witness intimidation claim under the first clause of § 1985(2), Plaintiff must allege: "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending any court of the United States or testifying freely in a matter pending therein, which (3) causes injury to the claimant." *Delbene v. Alesio*, 2001 WL 170801, at *12 (S.D.N.Y. Feb 21, 2021). Allegations

that YU Defendants dissuaded participation in law enforcement investigations, *see* SCAC ¶ 123, are irrelevant to the witness intimidation clause of § 1985(2), which "applies only to conspiracies to prevent witnesses from appearing in *federal* courts." *Herrera v. Scully*, 815 F. Supp. 713, 726 (S.D.N.Y. 1993) (emphasis in original). Plaintiff does not allege that YU took actions to prevent people from testifying in federal court. *See, e.g.*, SCAC ¶ 194 (alleging merely that Lopez and Levy at some point "implicitly threaten[ed]" students "favorable to Plaintiff"); *Saunders v. Vinton*, No. 12 Civ. 581, 2013 WL 1729264, at *7 (D. Conn. Apr. 22, 2013) ("The plaintiff cannot establish a claim under § 1985(2) for deterring a party or witness from attending or testifying in federal court, because the plaintiff has failed to allege that there was a federal court proceeding at which a party or witness might have appeared or testified.").

The witness intimidation claim under the first clause of § 1985(2), which is brought against Levy, Lopez, and YU, *see* SCAC ¶ 192, fails for yet another reason. Under Second Circuit precedent, there can be no § 1985(2) conspiracy where, as here, "the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) (holding that there can be no conspiracy between trustees and faculty members of Brooklyn Law School).

Further, as to the obstruction of justice claim under the second clause of § 1985(2), Plaintiff must allege that "the defendants acted with class-based, invidiously discriminatory animus." *Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir. 1989); *see also Helmer v. Cap. One*, No. 22 Civ. 1082, 2022 WL 18356326, at *3 (N.D.N.Y. Nov. 9, 2022), *report and recommendation adopted*, 2023 WL 197683 (N.D.N.Y. Jan. 17, 2023). But Plaintiff has presented no facts showing that Asher, Cypess, or YU (the defendants named in Count 9) was

motivated by discriminatory animus. *See, e.g.*, SCAC ¶¶ 123–24. Plaintiff's conspiracy claims under § 1985(2) are, therefore, dismissed.

### C. ADA and Rehabilitation Act Claims (Counts 10, 11, 12, 27, 35)

Plaintiff brings multiple claims under the ADA and the Rehabilitation Act. First, Plaintiff alleges under ADA Title III, 42 U.S.C. § 12182, and the Rehabilitation Act § 504, that certain YU Defendants failed to provide reasonable accommodations and engage in an interactive process in connection with his request for accommodations. *See* SCAC ¶¶ 132–36, 254–58 (Counts 11, 35). Second, Plaintiff alleges that certain YU Defendants engaged in unlawful retaliation under the ADA, 42 U.S.C. § 12203(a), in the form of "unwarranted discipline, eviction from housing, visa cancellation and ultimately expulsion" in response to his reports the March 21 assault and his request for disability accommodations. SCAC ¶ 128; *see id.* ¶¶ 127–129, 137–41, 214–18 (Counts 10, 12, and 27). These claims fail.

There is no individual liability under the ADA or Rehabilitation Act. Plaintiff's claims against individual defendants are, therefore, dismissed with prejudice. *See Quintyne v. Daly*, No. 25 Civ. 4865, 2026 WL 2568922, at *10 (S.D.N.Y. Aug. 31, 2026).

#### 1. Reasonable Accommodations (ADA and Rehabilitation Act)

Plaintiff's claim under Title III of the ADA fails to the extent he seeks monetary damages. *See, e.g.*, SCAC ¶¶ 107–110 (seeking monetary damages); *Sandler v. Benden*, No. 15 Civ. 1193, 2016 WL 9944017, at *16 (E.D.N.Y. Aug. 19, 2016) (explaining that Title III does not allow for monetary damages), *aff'd*, 715 F. App'x 40 (2d Cir. 2017) (summary order). However, to the extent that Plaintiff's expulsion was based on YU's failure to accommodate his disability, the Court could order prospective relief in the form of reinstatement. *See, e.g.*, *Martinez v. Sanders*, No. 02 Civ. 5624, 2004 WL 1234041, at *7 (S.D.N.Y. June 3, 2004)

("[R]einstatement is a form of prospective equitable relief."). And, Plaintiff may still seek monetary relief under the Rehabilitation Act. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009). Recipients of federal funding, like YU, must comply with § 504 of the Rehabilitation Act, which sets forth the same substantive standards as the ADA with respect to failure-to-accommodate claims. *See Saraceni v. Retting*, 726 F. Supp. 3d 101, 129 (N.D.N.Y. 2024) ("Failure-to-accommodate claims under the Rehabilitation Act are subject to the same definition of an 'individual with a disability' and same prima facie standard as claims brought under the [ADA]."); *Tull v. New York City Housing Auth.*, 722 F. App'x 75, 77 (2d Cir. 2018) (summary order).

To state a *prima facie* case for a failure to accommodate under the ADA and Rehabilitation Act, Plaintiff must show that (1) he is a person with a disability under the statutes; (2) YU, the defendant covered by the statute, had notice of his disability; (3) with reasonable accommodation, Plaintiff could perform the essential functions of being a student without issue; and (4) YU refused to make such accommodations. *See Raymond v. 1199SEIU Nat'l Benefit Fund*, No. 25-707, 2026 WL 2117879, at *7 (2d Cir. July 23, 2026) (ADA); *Saraceni*, 726 F. Supp. 3d at 129 (Rehabilitation Act). Courts analyze claims "for refusal to engage in the interactive process as part of [a plaintiff's] failure-to-accommodate claim." *Harris v. City of New York Dep't of Health & Mental Hygiene*, No. 24 Civ. 4348, 2026 WL 710201, at *11 (E.D.N.Y. Mar. 13, 2026). A defendant's "failure to engage in the interactive process can form the basis for a failure-to-accommodate claim as long as 'there was a reasonable accommodation'" available. *Id.* (internal quotation marks and citation omitted).

Plaintiff states that following the March 21 assault, he was "left with serious disabilities and health challenges that interfered with studies," including "cognitive impairments," "hearing

loss," and "psychological trauma." SCAC ¶ 77. He "requested accommodations" with "documentation from his doctors" and claims that YU "refused to implement a reduced course load or any meaningful academic adjustment." *Id.*; *see id.* ¶ 78 ("No extensions of deadlines, no modified exam schedules, no counseling support was offered.").

On a motion to dismiss, even "[w]here a document is not incorporated by reference, the [C]ourt may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted). In this case, Plaintiff both had notice of and directly relied upon YU's email response to his accommodations request in constructing his disability-related claims. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also* SCAC ¶ 78 (discussing YU's response to his request). The Court, therefore, considers YU's responsive emails, several of which Plaintiff himself filed with the Court in this litigation, *see, e.g.*, ECF No. 46 at 84–87. YU's response belies the allegations that YU offered him no accommodation or failed to engage in an interactive process. On May 13, 2024, a YU dean, Fredric Sugarman, approved Plaintiff "to take deferral exams" in September 2024, rather than in the spring of 2024, and stated that he "hope[s] [Plaintiff] feel[s] better and can continue with [his] work." ECF No. 20 at 173, 176; *see also* ECF No. 46 at 84–87.

Plaintiff has not plausibly alleged that YU's response—delaying his final exam schedule by several months—was not reasonable and that further accommodation was required in light of his alleged disabilities. *See also Lipton v. N.Y. Univ. Coll. of Dentistry*, 865 F. Supp. 2d 403, 409 (S.D.N.Y. 2012) ("[A] court should defer to an academic institution's decision that a particular accommodation is not reasonable when it has 'diligently assessed the available options and then made an academic judgment . . . that to accommodate the student would work a change in the

substance of its . . . program, and impose an undue hardship on its academic program.'"). In fact, Plaintiff specifically requested "flexibility with . . . deadlines" and "modified exam schedules," SCAC ¶ 78, and the doctor's note accompanying his request, which is incorporated by reference in the SCAC, *see id.* ¶ 77 (referencing medical documentation submitted to YU), clears Plaintiff for continued studies in two months from May 2024, *see* ECF No. 20 at 170–71.

Even excluding these documents, the Court finds Plaintiff's allegations too vague to state a claim under the ADA and Rehabilitation Act. He does not allege with sufficient specificity the nature of his alleged disability, to whom he made his accommodations requests, when he made them, or how the accommodations he seeks would have enabled him to complete his schoolwork, despite his disability. *See* SCAC ¶¶ 77–78; *Veras v. N.Y.C. Dep't of Ed.*, No. 22 Civ 00056, 2024 WL 3446498, at *3 (S.D.N.Y. July 17, 2024) (dismissing a Rehabilitation Act claim where "Plaintiff does not allege . . . when or how Defendants refused any requested accommodations [or] any specific complaints that she made regarding disability accommodations . . . .").

The Court, therefore, dismisses Plaintiff's reasonable accommodations claims.

2. Retaliation (ADA)

The Court next considers Plaintiff's ADA retaliation claim against YU. "A plaintiff raising a retaliation claim under the ADA must plausibly allege that [he] (1) 'was engaged in protected activity,' (2) 'the alleged retaliator knew that plaintiff was involved in protected activity,' (3) 'an adverse decision or course of action was taken against plaintiff,' and (4) 'a causal connection exists between the protected activity and the adverse action.'" *Witcher v. New York City Dep't of Educ.,* No. 23-465, 2024 WL 3220264, at *2 (2d Cir. June 28, 2024) (quoting *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023)).

"Protected activity is action taken to protest or oppose statutorily prohibited discrimination [under the ADA]." *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (internal quotation marks and citation omitted). Plaintiff has not alleged that his nonspecific and undated complaints about YU's handling of Amar's assault protested or opposed disability discrimination; therefore, such complaints are not plausibly protected activity under the ADA. The only disability-related protected activity that Plaintiff alleges is his request for a reasonable accommodation made soon after March 2024. *See* SCAC ¶ 77; *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002) (providing that requesting or seeking a reasonable accommodation constitutes protected activity).

Plaintiff has not, however, shown that YU took adverse action against him because of this protected activity. Plaintiff alleges that YU took adverse actions against him by evicting him from housing, denying him access to educational and counseling resources, and eventually constructively expelling him. *See, e.g.*, SCAC ¶¶ 79, 127–31, 138–49, 216. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow [students] who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (citation omitted).

First, Plaintiff does not raise an inference of causation between his protected activity and his purported exclusion from housing because the latter occurred in late 2023, *id.* ¶ 64, before any disability-based protected activity in spring 2024. Second, as to the denial of educational and counseling resources, Plaintiff's complaint is too vague to rely on temporal proximity, as it does not state when the alleged adverse action took place. *See, e.g.*, *Henry v. N.Y.C. Health &*

*Hosp. Corp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014) (dismissing retaliation claim where the complaint "fail[ed] to state with even a modicum of specificity when the relevant events occurred[,]" rendering the complaint's "conclusory allegations . . . simply too vague in nature and non-specific as to time . . . to serve as a basis for" the claim (internal quotation marks and citation omitted)). Nor does the complaint allege retaliatory animus in connection with YU's purported denial of resources—for example, the complaint does not claim that the YU administrators who denied him resources made negative comments about Plaintiff's requests for accommodations. To the contrary, the complaint concedes that YU believed Plaintiff had engaged in "disruptive behavior" in the counseling sessions. SCAC ¶ 79; *see Yarde v. Good Samaritan Hosp.,* 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("In this Circuit, an inference of causation is defeated . . . if . . . there was an intervening causal event.").

Finally, Plaintiff's alleged constructive expulsion occurred in fall of 2024—several months after the March 2024 attack, after which he claims to have "promptly" sought reasonable accommodations. SCAC ¶¶ 77, 80. Without more, the expulsion is too removed from his spring 2024 accommodations request to raise a plausible inference that YU expelled Plaintiff because of his request. *See, e.g.*, *Johnson v. City of N.Y.*, No. 23 Civ. 6804, 2024 WL 4336317, at *10 (S.D.N.Y. Sept. 27, 2024) ("The Second Circuit has consistently held that more than two months is too long to infer such causation."). In fact, Plaintiff describes other causes of his expulsion, undermining a reasonable inference of retaliation—for example, he concedes that his "academic and personal life were in disarray." SCAC ¶ 77–78; *see Mitchell v. Planned Parenthood of Greater New York, Inc.*, No. 23 Civ. 1932, 2025 WL 1795378, at *14 (S.D.N.Y. June 30, 2025) (explaining that ADA retaliation claims require but-for causation).

The Court finds, therefore, that Plaintiff has not plausibly alleged retaliation in connection with disability-based protected activity.[7]

D. Title VI Claims (National Origin)

"Title VI prohibits discrimination based on 'race, color, or national origin,' in connection with 'any program or activity receiving [f]ederal financial assistance.'" *Koumantaros v. City Univ. of New York*, No. 03 Civ. 1017, 2007 WL 840115, at *7 (S.D.N.Y. Mar. 19, 2007) (quoting Title VI, 42 U.S.C. § 2000d).

Many of Plaintiff's Title VI claims are readily dismissed. As previously stated, Plaintiff cannot bring Title VI claims against individual defendants, so they are dismissed. *See Verdi*, 306 F. Supp. 3d at 542. Title VI claims against Seyfarth Shaw LLP are also dismissed because Plaintiff does not allege that the firm receives federal funding, as required for Title VI liability. *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2014); *see generally* SCAC. Lastly, Plaintiff's Title VI claim based on age discrimination is dismissed because age is not a protected category under Title VI. *See Minto v. Molloy Univ.*, 715 F. Supp. 3d 422, 431 (E.D.N.Y. 2024). The Court, therefore, considers only the Title VI claims brought against YU alleging discrimination based on national origin. There is no dispute that YU receives federal funds and may be held liable under Title VI. *See* SCAC ¶¶ 143, 146; YU Mem. 38–40.

1. Overt Discrimination and Disparate Treatment (Counts 13, 15)

Plaintiff contends that YU discriminated against him on the basis of national origin when it allegedly denied him disability accommodations, refused protection from harassment, and expelled him. *See* SCAC ¶ 154. "In order to establish a claim based on [Title VI], the plaintiff

---

[7] Plaintiff does not bring a retaliation claim under the Rehabilitation Act. *See* SCAC ¶¶ 127, 137, 217. Even if he did, such a claim would fail for similar reasons as his ADA retaliation claim. *See Gill-Drayton v. New York State Educ. Dep't*, No. 23 Civ. 10259, 2026 WL 880546, at *5 (S.D.N.Y. Mar. 31, 2026) (explaining that retaliation claims under the ADA and Rehabilitation Act are analyzed under the same framework); *Weixel*, 287 F.3d at 148.

must show, *inter alia*, that the defendant discriminated against him on the basis of [national origin], that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).

The Court's Title VI analysis is guided by the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Koumantaros*, 2007 WL 840115, at *7. Plaintiff may first successfully allege a *prima facie* case of discrimination through (i) "direct evidence of discriminatory conduct" or, (ii) where unavailable, through "indirect evidence, by demonstrating that: (1) [he] is a member of a protected class; (2) [he] suffered an adverse action in pursuit of [his] education by defendant; (3) [he] was treated differently from similarly situated students who are not members of the protected class; and (4) [he] was qualified to continue in [his] educational pursuit." *Id.* at *8. If Plaintiff makes out a *prima facie* case, the burden shifts to YU to show a legitimate, nondiscriminatory reason for its conduct. *Id.* Plaintiff then has the opportunity to prove that the legitimate reasons offered by the defendant were not the true reasons but a pretext for discrimination. *Id.*

Plaintiff has not provided "plausible support [for] a minimal inference of [YU's] discriminatory motive" in connection with any of the adverse actions mentioned. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Plaintiff's national origin discrimination claim rests on factual allegations that (i) Silbermintz, a YU faculty member, stated in an internal faculty email in December 2022 that Plaintiff was from Germany, and at some point, made a comment "effectively endorsing" a stereotype about Plaintiff; (ii) a YU student, Werta, insulted Plaintiff because of his German origin in October and November 2022; (iii) other YU students, Hambra and Serfaty, made "derogatory remarks" about him at an

unknown time and place; and (iv) Amar, another YU student, "hurled ethnic slurs and derision" at Plaintiff's German origin during the March 13 altercation. SCAC ¶¶ 29, 60, 66, 144, 149.

With respect to comments made by YU *students* about Plaintiff's national origin, there is no reasonable basis to infer that YU *administrators* adopted or were influenced by those comments in taking any alleged adverse action against Plaintiff. *See Vengalattore v. Cornell U.*, 36 F.4th 87, 109 (2d Cir. 2022) (dismissing a Title VI claim where there are no plausible allegations that comments about the plaintiff's ethnicity made by a student and faculty member influenced the decisionmaker); *see, e.g.*, SCAC ¶¶ 30, 77–78 (allegations relating to the denial of accommodations); *id.* ¶¶ 80–81, 250, 258 (allegations relating to expulsion).

As to Professor Silbermintz, Plaintiff's assertion that she made a comment "effectively endorsing" a stereotype about him is overly vague. *See id.* ¶ 144. Plaintiff does not state what the comment was or when it was made, nor does he allege that Silbermintz had decision-making authority with respect to an alleged adverse action. *See generally* SCAC. Silbermintz' internal faculty email stating only that Plaintiff is from Germany does not evince animus and was sent in December 2022, well before the denial of Plaintiff's accommodation request or expulsion, both of which followed the March 2024 incident with Amar. *See* SCAC ¶¶ 29, 154.

As to Plaintiff's claim of disparate treatment, he presents only a single conclusory allegation that "younger American-born students who engaged in comparable or worse misconduct were permitted to remain enrolled [at YU], while [he] was treated as expendable because of his foreign status." SCAC ¶ 154. "Even on a motion to dismiss, a court cannot accept 'naked assertions' in a complaint that [do] not set forth supporting allegations of facts." *Odom v. Columbia Univ.*, 906 F. Supp. 188, 194–95 (S.D.N.Y. 1995) (quoting *Yusuf v. Vassar*

*Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)). Plaintiff's Title VI disparate treatment claim is, therefore, dismissed.

2. Hostile Educational Environment (Count 14)

Plaintiff has also failed to state a claim against YU for a hostile educational environment. In the educational setting, a school may be liable under Title VI "for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student." *Zeno v Pine Plains Cent. School Dist.*, 702 F.3d 655, 665 (2d Cir 2012) (citation omitted). "Liability only arises if a plaintiff establishes: (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference." *Id.* Specifically, the harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *see Zeno*, 702 F.3d at 665. Furthermore, "allegations of discrimination that do not include references to race or any facts from which race-based discriminatory intent can be inferred, do not state a claim." *Cain v. Mercy Coll.*, No. 20 Civ. 2262, 2020 WL 4194637, at *4 (S.D.N.Y. July 20, 2020).

Plaintiff's claim focuses on Werta's insulting comments, made during two months in the fall of 2022 regarding Plaintiff's German heritage, as well as purportedly discriminatory comments made by other students. *See* SCAC ¶¶ 60, 149. These comments were not "so severe, pervasive, and objectively offensive" that Plaintiff was effectively deprived of access to YU's educational benefits. *Id.* Indeed, it appears that Werta's harassment stopped after November

2022, and Plaintiff remained a student at YU for two more years. *See id.* ¶¶ 60–63, 80 (stating that Plaintiff was a student at YU until October 2024).

Plaintiff also has not shown YU's deliberate indifference. "Deliberate indifference is a state of mind that Plaintiff may establish by demonstrating that school officials were made aware of the hostile environment, but chose to do nothing about it." *Barmore v. Aidala*, No. 04 Civ. 0445, 2006 WL 1978449, at *8 (N.D.N.Y. July 12, 2006). A school's actions are only deliberately indifferent if they were "clearly unreasonable in light of the known circumstances." *Zeno*, 702 F.3d at 666 (quoting *Davis*, 526 at 648). And "when weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians." *Id.* Plaintiff offers insufficient detail about YU's response to Werta's harassment to state a claim. He concedes that at least one YU employee "did intervene upon learning of the Nazi-themed attacks," including by "collect[ing] the evidence and notify[ing]" administrators. SCAC ¶ 62. He does not claim that YU did nothing—rather, he argues that YU did not take, in his view, "*meaningful* steps *at that time* to curb Werta's conduct." *Id.* ¶ 61 (emphases added). The Court cannot credit such conclusory assertions. Moreover, Plaintiff does not allege that Werta continued to harass him after November 2022. *See generally* SCAC. It is, therefore, implausible that YU's response was clearly unreasonable.

YU's response to Amar's March 21, 2024 assault does not support a hostile educational environment claim either.[8] Although Plaintiff claims that Amar's assault was "unquestionably bias-motivated," *id.* ¶ 71, Plaintiff has not provided facts showing discrimination or racial hostility, as required for Title VI liability, *see id.* ¶¶ 68–70; *Zeno*, 702 F.3d at 665. Rather, on the facts alleged in the complaint, Amar attacked Plaintiff on March 21 because of an

[8] Although Plaintiff does not explicitly reference this conduct when articulating his hostile educational environment claim, *see* SCAC ¶¶ 148–49, the Court considers it for completeness.

interpersonal conflict over Plaintiff's accusations that Amar stole his computer charger, not because of Plaintiff's national origin. *See* SCAC ¶ 68. Plaintiff also does not show that Amar took any action against Plaintiff again. *See generally id.*; *see also N.U. v. E. Islip Free Sch. Dist.*, No. 16 Civ. 4540, 2017 WL 10456860, at *6 (E.D.N.Y. Sept. 15, 2017) (requiring harassment to be "more than episodic" and "sufficiently continuous and concerted" to be actionable under Title VI (citation omitted)). Therefore, the Court holds that Plaintiff has not plausibly alleged both "severe and discriminatory harassment." *Zeno*, 702 F.3d at 665–66. For these reasons, Plaintiff fails to state a hostile educational environment claim against YU.

E. RICO Claims (Count 21)

Plaintiff has not pleaded a civil RICO claim. "To establish a RICO claim, a plaintiff must show: (1) a violation of . . . 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of [§] 1962." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quotation marks and citation omitted). To establish a violation of § 1962, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (citation omitted). "Racketeering activity," in turn, includes any "'act' indictable under various specified federal statutes," and a "'pattern of racketeering activity' is defined by the statute as 'at least two acts of racketeering activity' within a ten-year period." *Id.* (citations omitted). Plaintiff alleges two mail and wire fraud predicates in connection with a purportedly fraudulent $27,500 tuition bill and a statement made by unnamed YU administrators to immigration authorities. *See* SCAC ¶ 184. Plaintiff states that these actions "may also qualify" as witness tampering or obstruction predicate acts under 18 U.S.C. §§ 1512, 1513. *Id.*

Plaintiff's civil RICO claim fails in multiple independent respects. First, Plaintiff fails to meet the particularity requirements for fraud allegations under Federal Rule of Civil Procedure

9(b). *See Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014) (explaining that Rule 9(b) applies to civil RICO allegations relating to mail and wire fraud). "Allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (internal quotation marks and citation omitted and alterations adopted). Plaintiff's allegations fall short of these requirements. *See* SCAC ¶ 184. Plaintiff also fails to specify how each defendant personally knew of, or participated, in the fraud. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'" in general. *Id.* As to 18 U.S.C. §§ 1512 and 1513, there are no facts showing that YU issued the tuition bill or made certain statements for the purposes of witness tampering and retaliation. *See generally* SCAC.

Second, Plaintiff has failed to allege two or more racketeering acts. The second act Plaintiff describes—fraudulent statements made to immigration authorities—is not a mail or wire fraud predicate because, on the facts alleged, the statements were not part of a scheme to defraud Plaintiff to get money or property. *See Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480, 488–89 (S.D.N.Y. 2020) (stating that the elements of wire and mail fraud include a "scheme to defraud . . . to get money or property"); SCAC ¶ 184. And, as stated, Plaintiff has not presented facts showing that YU committed these acts to intimidate or retaliate against a witness.

Third, Plaintiff has not adequately pleaded continuity. Continuity is established by either open-ended continuity—"when the alleged scheme 'by its nature projects into the future with a threat of repetition'"—or closed-ended continuity—when "the pattern of racketeering activity involves predicate acts 'extending over a substantial period of time'" (typically, at least two

years). *Williams*, 443 F. Supp. 3d at 493 (citations omitted). Based on Plaintiff's complaint, there is no threat of continuing activity into the future, and the alleged predicate acts did not extend over a substantial period of time. *See* SCAC ¶ 184(c) (stating that the acts occurred in April, May, and June 2025); *see also id.* ¶ 184 (suggesting that the acts occurred from March 2024 through mid-2025). For each of these reasons, Plaintiff's civil RICO claim fails, and because the Court concludes that amendment would be futile, dismissal is with prejudice.

F. Constitutional Claims (Counts 25 and 28)[9]

Plaintiff has not adequately alleged constitutional claims against YU Defendants because no defendant engaged in state action. *See Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is . . . required to show state action."). "State action requires both the exercise of some right or privilege created by the State and the involvement of a person who may fairly be said to be a state actor." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (cleaned up). The actions of a "nominally private entity" may be "attributable to the state" when: (1) "the entity acts pursuant to the coercive power of the state or is controlled by the state (the compulsion test);" (2) "the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies (the joint action test or close nexus test);" or (3) "the entity has been delegated a public function by the state[] (the public function test)." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (internal quotation marks and citation omitted and alterations adopted).

---

[9] Although Plaintiff cites 42 U.S.C. § 1983 as a cause of action for his educational interference claims (Counts 29, 33), he does not identify the source of federal law giving raise to those claims. To the extent he relies on the U.S. Constitution, Counts 29 and 33 fail for the same reason as Counts 25 and 28.

Plaintiff has not alleged that YU, a "private . . . educational institution," SCAC ¶ 18, or its employees engaged in state action under any of these tests. Plaintiff argues that "[e]ducation is a traditionally exclusive public function," *id.* ¶ 46, but courts have repeatedly held that private educational institutions and their employees may not ordinarily be sued under § 1983, *see, e.g.*, *Biswas v. Rouen*, 808 F. App'x 53, 54 (2d. Cir. 2020) (summary order); *Phillips v. Sage Colleges*, 83 F. App'x 340, 341 (2d Cir. 2003); *Subbotovskiy*, 2023 WL 8829173, at *3; *Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 182–83 (N.D.N.Y. 2020). Plaintiff's claim that YU is a state actor because its "policies are so entwined with state functions and funding," SCAC ¶ 46, fares no better. "The fact that an entity receives public funds does not turn private action into state action." *Smith v. Westhab Traverse House*, No. 24 Civ. 4961, 2025 WL 26067, at *3 (S.D.N.Y. Jan. 2, 2025) (citation omitted). Because Plaintiff has not plausibly alleged state action, and amendment would be futile, his constitutional claims are dismissed with prejudice.

G. Conspiracy to Violate Civil Rights (Count 26)

Plaintiff's civil rights conspiracy claim under 42 U.S.C. § 1985(3) fails for the same reason as his constitutional claims. "Section 1985(3) provides no substantive rights itself; rather, it merely provides a remedy for violation of the rights it designates." *Friends of Falun Gong v. Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003); *see Vandermark v. City of New York*, 615 F. Supp. 2d 196, 205 (S.D.N.Y. 2009) (explaining that the "'rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere,' namely within a constitutional guarantee" (citation omitted)). Because Plaintiff has not shown that YU Defendants engaged in state action, Plaintiff has not shown that they conspired to violate his Fourteenth Amendment rights. *See Catania v. United Fedn. Of Teachers*, 21 Civ. 1257, 2024 WL 495638, at *13 (S.D.N.Y. Feb. 8, 2024) (explaining that the Fourteenth Amendment protects

individuals "against *state action*, not against wrongs done by individuals" (citation omitted)). Moreover, Plaintiff's sole allegation of a conspiracy—that YU Defendants "entered into a meeting of the minds to ensure Plaintiff was expelled," SCAC ¶ 213—is wholly conclusory. "It is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive person of constitutional rights cannot withstand a motion to dismiss.'" *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting *Leon v. Murphy*, 900 F.3d 303, 311 (2d Cir. 1993)).

Because the Court finds that amendment would be futile, Plaintiff's § 1985(3) conspiracy claim is dismissed with prejudice.

H. Supplemental Jurisdiction

Plaintiff brings his claims in federal court pursuant to federal question jurisdiction. *See* SCAC ¶ 12. The Court has dismissed Plaintiff's federal causes of action. A federal district court "may decline to exercise supplemental jurisdiction over a [state law] claim" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In determining whether to exercise supplemental jurisdiction under § 1367(c), the Court considers "the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation omitted). "Courts in the Second Circuit generally decline to exercise supplemental jurisdiction after a plaintiff's federal claims have been dismissed." *Novikov v. 141 Mansion Ave Restaurant LLC*, No. 25 Civ. 1581, 2026 WL 274392, at *6 (E.D.N.Y. Jan. 29, 2026). Courts are "particularly reluctant to exercise supplemental jurisdiction where a matter is in the early stages of litigation, as is the case here." *Id.* Because of the early stage of this litigation, and in the interest of comity, the Court declines

to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice.[10]

I. Leave to Amend

The Court recognizes that Plaintiff has been afforded multiple opportunities to amend his complaint, that he has not proposed specific amendments, and that he "has . . . changed his story" on multiple occasions, leaving Defendants to defend against shifting allegations. ECF No. 110; *see, e.g.*, ECF No. 90 (order stating that no further amendments shall be permitted absent good cause); ECF No. 113 (denying Plaintiff leave to amend). At the same time, Plaintiff has not had an opportunity to amend his complaint with the benefit of a court order, and courts should not typically dismiss a *pro se* complaint without granting leave to amend unless amendment would be futile. *See Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19 Civ. 7840, 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). After careful consideration, the Court finds that amendment would be futile for all but the following claims: hostile educational environment under Title VI (Count 14) against YU, failure to accommodate under the ADA and Rehabilitation Act (Counts 11, 35) against YU, and retaliation under the ADA (Counts 10, 12, 27) against YU. All other federal claims are dismissed with prejudice.

By **October 22, 2026,** Plaintiff move for leave to amend the aforementioned claims. Plaintiff's motion must be accompanied by (1) a proposed amended complaint; (2) a redline or a description of the changes from the operative complaint to the proposed amended complaint; and (3) a memorandum of law, not to exceed 3,500 words, explaining how the amendments address

[10] These include Plaintiff's claims for assault (Count 1), battery (Count 2), IIED (Count 3), trespass (Count 4), defamation and defamation per se (Counts 5, 32, 34), conspiracy to defame (Count 6), false imprisonment (Count 7), invasion of privacy (Count 8), disability discrimination and retaliation (Counts 10, 12, 27, 11), age discrimination (Count 16), breach of contract (Count 17), fraudulent misrepresentation (Count 18), fraudulent billing (Count 19), abuse of process (Count 20), spoliation of evidence (Count 22), negligent hiring and supervision (Count 24), academic retaliation (Count 29) and interference with educational opportunity (Count 33), negligence (Count 30), retaliatory threats of deportation (Count 31), and retaliatory billing (Count 36).

the deficiencies described in this order. If Plaintiff does not seek leave to amend his complaint by that date, all federal claims shall be dismissed with prejudice. Plaintiff is advised that in considering whether leave to amend should be granted, the Court "may properly consider [his] submissions outside the complaint." *Burdick v. Oswego Cnty.*, No. 12 Civ. 1711, 2014 WL 12781320, *1 (N.D.N.Y. Mar. 31, 2014).

**CONCLUSION**

Werta's motion to dismiss and Hambra and Serfaty's motions to dismiss are each GRANTED WITH PREJUDICE. YU Defendants' motion to dismiss is GRANTED WITHOUT PREJUDICE with respect to Plaintiff's state law claims and Counts 10, 11, 12, 14, 27, and 35 (asserting a hostile educational environment claim against YU under Title VI, a failure-to-accommodate claim against YU under the ADA and Rehabilitation Act, and a retaliation claim against YU under the ADA) and GRANTED WITH PREJUDICE with respect to all other federal claims.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 100 and 106.

SO ORDERED.

Dated: September 24, 2026
New York, New York

ANALISA TORRES
United States District Judge